UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


IN RE:
JET 1 CENTER, INC.,

                    Debtor.

_____

                                    Case No.  2:05-cv-568-FtM-29DNF
                                    Bankr. No. 03-26514-ALP
                                    Adversary No. 04-110


JET 1 CENTER, INC.,

                    Appellant/Cross-
                    appellee,

vs.

CITY OF NAPLES AIRPORT AUTHORITY,

                    Appellee/Cross-
                    appellant.


_____


### OPINION AND ORDER

This matter comes before the Court on appellant Jet 1 Center, Inc.'s Motion for Stay Pending Appeal of Bankruptcy Court's Judgment (Doc. #1) and supporting Memorandum (Doc. #2), both filed on November 7, 2005. Appellee the City of Naples Airport Authority (appellee or the Authority) filed its Response on November 29, 2005. (Doc. #6). Finding that the parties have fully briefed the issues on the motion for stay, the Court concludes that oral argument is not necessary.

**I.**

The factual background and procedural history of this case are accurately set forth by Bankruptcy Judge Alexander L. Paskay in his August 26, 2005, Findings of Fact, Conclusions of Law and Memorandum of Opinion and Order (FOFCL Order).  See In re Jet 1 Center, Inc., 335 B.R. 771, 774-82 (M.D. Fla. 2005).  The Court adopts the background facts and procedural history as set forth in detail by Judge Paskay.  Judge Paskay's Order denying debtor's motion for stay pending appeal to the district court is published with his FOFCL Order.  In re Jet 1 Center, Inc., 335 B.R. at 789-91.

**II.**

It is unclear from Debtor's motion and memorandum whether it is seeking a stay from this court pursuant to Fed. R. Bankr. P. 8005, or is seeking review of the denial of a stay by Judge Paskay. The motion and memorandum contain arguments which could be construed in either fashion.  The Court concludes, however, that under either approach a stay is not warranted.

To obtain a stay pending appeal from a bankruptcy court pursuant to Rule 8005, the following standard must be satisfied: "[T]he movant must clearly establish: (i) that the movant is likely to prevail on the merits of its appeal, (ii) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted, (iii) that other parties will suffer no substantial

harm if a stay or other injunctive relief is granted, and (iv) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest." <u>Tooke v. Sunshine Trust Mortgage Trust</u>, 149 B.R. 687, 689 (M.D. Fla. 1992)(quoting <u>In re The Charter Co.</u>, 72 B.R. 70, 71-72 (M.D. Fla. 1987)).  The decision whether to grant a stay pending appeal is left to the sound discretion of the bankruptcy court, and a district court sitting in an appellate capacity reviews the decision for an abuse of discretion. <u>In re Colony Square Co.</u>, 788 F.2d 739, 741 (11th Cir. 1986); <u>In re Lang</u>, 414 F.3d 1191, 1201-02 (10th Cir. 2005).

Rule 8005 also gives a district court the authority to issue a stay pending appeal of a bankruptcy court order.  When such a stay is requested, the district court examines the matter *de novo*, considering the same four factors utilized by a bankruptcy court. <u>Lang</u>, 414 F.3d at 1202 n. 31.  Issuance of a stay by the district court is a matter within its sound discretion.

### III.

### A. Likelihood of Success on the Merits

As is relevant to the current motion, the bankruptcy court found that the Leases between Debtor and the Airport Authority were properly terminated pre-petition.  Based upon this finding, the bankruptcy court concluded that the Leases were not property of the bankruptcy estate.

Jet 1 first attacks the bankruptcy court's denial of a stay, arguing that the bankruptcy court "simply refused to evaluate whether Jet 1 established a likelihood of success on the merits," but instead relied upon its prior decision and assumed Jet 1 could not make such a showing.  (Doc. #2, pp. 2, 4-5).  This argument is refuted by the very language of the bankruptcy court's order denying a stay.  After summarizing Debtor's argument as to the likelihood of success, the bankruptcy court stated that Debtor was effectively asking the court to reconsider its ruling on the merits.  The bankruptcy court declined to do so, stating: "Determining whether the Debtor would ultimately prevail on appeal is beyond the scope of this Court's powers; however, this Court is satisfied that, based on the Findings of Fact and the Conclusions of Law already issued in this proceeding, the Debtor has not shown a likelihood of success on the merits."  In re Jet 1 Center, Inc., 335 B.R. at 790.  The Court finds that the bankruptcy court did consider the likelihood of success factor, and its determination was not an abuse of discretion.

Jet 1 next argues that the bankruptcy court erred in finding the leases were terminated pre-petition, and it is therefore likely to succeed in its appeal, because: (1) the bankruptcy court failed to understand the distinction between the defaults alleged in the August 15, 2002 letter and the defaults alleged after November 8, 2002; (2) the bankruptcy court improperly relied upon the ruling of the state Circuit Court in the Injunction Action to say that the

Jet 1 was in default as alleged in the August 15, 2002 letter, even though the state court never considered the issues or made such a ruling; (3) the bankruptcy court's determination failed to properly consider the actions of the Airport Authority after sending the August 15, 2002, letter which were inconsistent with terminated Leases but consistent with existing Leases; (4) the bankruptcy court ignored evidence of Debtor's attempt to resolve any of the alleged defaults after August 15, 2002; and (5) the bankruptcy court ignored evidence of Jet 1's ability to cure and to provide adequate assurance of future performance under the Leases as required by Section 365.   (Doc. #2, pp. 5-6).   Additionally, Jet 1 argues that the Airport Authority waived its right to terminate the Leases by accepting monthly payments from Jet 1 after its attempted termination and with knowledge of the alleged breaches. (Doc. #2, pp. 9-10).

Upon *de novo* review, the Court finds that Jet 1's arguments do not establish a likelihood of success on the merits in this appeal. The bankruptcy court's reliance upon the state court decision is fully supported by its citations to the record.   In re Jet 1 Center, Inc., 335 B.R. at 783 n. 31-34.   Additionally, the bankruptcy court made clear that its reliance was on the record as a whole, not just the state court decision.   Id. at 783.   This included consideration of both the Airport Authority's and Jet 1's post-August 15, 2002 conduct.   Id. at 783-85.   There is no indication that the bankruptcy court failed to understand

-5-

distinctions between the alleged defaults.  While Jet 1 disagrees with the bankruptcy court's findings, it has not shown a likelihood of success on appeal as to these five issues.

Jet 1 also contends that the Airport Authority's acceptance of rent after the lease termination date constituted a waiver of the prior defaults.  "It is the general rule that a lessor may, by accepting the benefits of a lease after its breach, be estopped from asserting a forfeiture because of that breach."  Tropical Attractions, Inc. v. Coppinger, 187 So. 2d 395, 396 (Fla. 3d DCA 1966); see also Gonzalez v. Archer, 718 So. 2d 889 (Fla. 3d DCA 1998); Western World, Inc. v. Dansby, 603 So. 2d 597 (Fla. 1st DCA 1992).  However, a party can provide, as the Airport Authority did here, that accepting rent payments after material breaches occurred does not constitute a waiver.  E.g., Gergora v. Flynn, 486 So. 2d 5, 6 (Fla. 3d DCA 1986).  The Court finds that Jet 1 has not shown a likelihood of success on this issue.

Jet 1 next contends that, assuming that the Leases remain in effect, the bankruptcy court committed manifest error in finding that Jet 1 neither had the ability to cure nor the ability to provide adequate assurance of future performance under the leases required by § 365 of the Bankruptcy Code.  In response, the Authority asserts that "there is no need to address [Jet 1's] arguments regarding the ability to cure defaults and assume the Leases pursuant to Section 365 of the Bankruptcy Code. [Jet 1] cannot assume a lease that no longer exists."  (Doc. #6, p. 16).

-6-

The Court agrees.   The Court finds that Jet 1 has not shown a likelihood of success on this issue.

**B.   Other Factors:**

Even assuming that Jet 1 could show a likelihood of success on the merits, the Court finds that the other three factors do not weigh strongly, if at all, in Jet 1's favor.

**(1)   Irreparable Injury to Jet 1**

Jet 1 argues that, in the absence of a stay, the following irreparable injury to Jet 1 will occur: (1) any appeal on the lease termination issue will become moot if Jet 1 is evicted from the premises, (2) Jet 1 will lose its ability to reorganize under Chapter 11 of the Bankruptcy Code, (3) a viable business will be destroyed, (4) Jet 1's subtenants will be harmed, (5) Jet 1 employees will lose their jobs, (6) Jet 1 will lose its investments in the business, and (7) any appeal on the Federal Aviation Administration Determination will become moot.

The Court finds that none of these injuries rise to the level of "irreparable injuries" under the circumstances.   If Jet 1 should prevail on its claims, Jet 1 or its Trustees could have a wrongful eviction action against the Authority for the resulting damages. Jet 1 has not provided any evidence that it is entitled to a Chapter 11 reorganization.   The record shows that Jet 1's cash levels have been steadily declining, and that, since Jet 1 has been in bankruptcy, its cash has declined significantly.   The Airport

Authority represents that it intends to allow the subtenants to maintain their aircrafts on the premises, and thus, the subtenants would not be displaced.  There is evidence that the remaining Jet 1 employees were seeking alternative employment, thus mitigating this harm.  Jet 1 could never have permanently retained its investment in the facilities, since in the leasehold agreements Jet 1 agreed to forfeit the improvements made to the facilities to the Airport Authority at the end of the lease terms.  Finally, the Eleventh Circuit dismissed the Petition for Review of the Federal Aviation Administration Determination for lack of standing on February 13, 2006, and consequently, the denial of a stay would not affect that appeal.  Thus, the Court concludes that Jet 1 has not shown that it will suffer irreparable injury in the absence of a stay.

### (2)  Substantial Injury to the Airport Authority

The Court further finds that the Airport Authority will suffer substantial harm if a stay pending appeal is granted.  Jet 1 correctly noted that the loss of revenue to the Airport Authority is $120,000.00 annually, not monthly.[1]  Jet 1 argues that a further brief delay will not harm the Airport Authority's position with respect to the Leases.  The Court disagrees.  The Airport Authority initiated the removal of Jet 1 from the premises in August 2002.

---

[1]The bankruptcy court erroneously found that the net revenue of $120,000.00 was monthly when the Airport Authority's testimony reflected that it could lose between $120,000.00 to $168,000.00 annually if a stay was granted.

-8-

It has been almost four years, and the Airport Authority has suffered substantial monetary harm.  The balance of this factor tilts in favor of the Airport Authority.

**(3)   Public Interest**

Jet 1 contends that its motion for a stay does not implicate public interest, and the bankruptcy court erroneously equated the public interest with that of the Airport Authority.  The Court, however, disagrees, and finds that the preservation of the financial health of the Airport Authority is in the public interest.  The Airport Authority operates the City of Naples Airport, and is required to maintain the airport facilities for the public.  In doing so, the Authority generates its revenues through leasing the airport facilities and through fees charged to the public for use of the facilities.  The underlying leasing agreements generate at a minimum $120,000.00 in net profit annually.  Such revenue would be beneficial to maintaining and improving the airport facilities, and directly affect any potential increases in the usage fees to the public.  Thus, the issuance of a stay would not serve the public interest.

Accordingly, it is now

**ORDERED:**

1.   Jet 1 Center, Inc.'s Motion for Stay Pending Appeal of Bankruptcy Court's Judgment (Doc. #1) is **DENIED.**  Jet 1 Center,

Inc. shall comply with the judgment of the bankruptcy court **on or before March 2, 2006.**

    2.   Jet 1 Center, Inc.'s Motion for Hearing is **DENIED.**

    3.   The Clerk is **directed** to fax a copy of this Opinion and Order to the parties and to the Honorable Alexander L. Paskay.

    4.   The Clerk shall send a certified copy of this Opinion and Order to the Clerk of the U.S. Bankruptcy Court and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of February, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record